**In re the Marriage of Rosalie V. WILSON, petitioner, Respondent,**

v.

**Warren H. WILSON, Appellant.**

**No. C6–83–1314.**

Court of Appeals of Minnesota.

May 1, 1984.

Neil A. McEwen, Richard N. Sather, Thief River Falls, for appellant.

Curtis L. Charlson, Ruth A. Jenny, Thief River Falls, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal arises from a dissolution proceeding. Warren Wilson challenges the trial court's division of property. We affirm.

## FACTS

When the Wilson marriage was dissolved, the parties had been married over forty years. During the marriage, the Wilsons engaged primarily in farming.

One month prior to the marriage Warren purchased 160 acres of land for $3,500. He also owned some machinery, livestock and seed valued at approximately $11,000.

After the parties married, they farmed the land purchased by Warren. Rosalie assisted by caring for the livestock, gardening, canning and tending to the household duties. About 2½ years after the parties married, Warren was stricken with tuberculosis and hospitalized from 1946 to 1951. Rosalie cared for the livestock the first 6 to 10 months of Warren's hospitalization but the farm land was rented to his brother. She then moved to Crookston to be near Warren. Some of the farm machinery and most of the livestock was sold. Rosalie worked in the sanitorium kitchen during Warren's stay and her income and the farm rental income were the Wilsons' sole source of support.

In 1951, Warren was released and a year later the Wilsons returned to the farm, began operations, purchased cattle, a tractor and other livestock. Rosalie made substantial contributions to the farming operation by taking care of the livestock and single-handedly assuming responsibility for all the household duties, including cooking, cleaning, baking, canning and child care. The Wilsons have two children.

For approximately 15 years, Rosalie's typical day began at 5:00 a.m. After milking, cleaning stables, feeding livestock, washing the milking equipment and cleaning the milkhouse, she would then prepare breakfast when Warren awoke. They both then tended to the remaining chores.

The Wilsons purchased two additional tracts of land in 1957 and 1973. The first has a present value of $83,100 and the second a present value of $99,200.

They also made many improvements to the property purchased by Warren prior to the marriage. At the time of purchase, the land contained an old house, out-buildings, a small chicken house, and a well. During the marriage the land was mortgaged to construct a barn and a basement for a house which was moved on the premises. The mortgage was paid from farm income generated by both parties, Rosalie's income earned during Warren's hospitalization, rental income, and proceeds from cattle and machinery sales owned by Warren prior to the marriage.

They also made other improvements and additions to the tract: a cattle shed in 1963, a two-car garage in 1964, another garage in 1970, a machine shed in 1973, additions to the chicken house, and five steel storage bins. The land was improved by the clearance of rocks and the construction of a

drainage ditch. It has a present value of $112,700, with the buildings valued at $16,200, and land at $96,500.

On July 8, 1983, when the marriage was dissolved, Warren was awarded marital personal property and cash in excess of $75,000. Rosalie was awarded marital personal property and cash in excess of $50,000.

The real estate was apportioned as follows:

| WARREN | ROSALIE |
|---|---|
| 1. The parcel of land purchased by Warren one month prior to the marriage, along with the improvements and additions to the land. This land, with the accompanying buildings, is presently valued at $112,700. | 1. The 1957 parcel of land, presently valued at $83,100. |
| 2. One quarter of the parcel of land purchased in 1973 is valued at $24,800. | 2. Three quarters of the parcel of land purchased in 1973, valued at $74,400. |
| 3. Total Value: $137,500. | 3. Total Value: $157,500. |

The total award of personal and real property to Warren approximates $212,500 and to Rosalie approximately $207,500.

## ISSUE

Was the trial court's division of property a clear abuse of discretion?

## ANALYSIS

Warren claims the trial court erred in considering his non-marital interest in the farm purchased prior to the marriage when making the property division because Rosalie's marital property award would not cause undue hardship.

Minn.Stat. § 518.58 (1982) provides:

[i]f the court finds that either spouse's resources or property, including his [or her] portion of the marital property as defined in section 518.54, subdivision 5 are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded under section 518.54, subdivision 5, clauses (a) to (d) to prevent the unfair hardship. * * *

In *Servin v. Servin*, 345 N.W.2d 754 at 758 (Minn.1984), the Minnesota Supreme Court said:

A trial court has broad discretion in dividing marital property upon dissolution of a marriage. Its decision will be overturned only for a clear abuse of discretion. This court on review must affirm the trial court's division of property if it had an acceptable basis in fact and principle even though this court may have taken a different approach. *Senglaub v. Senglaub*, 302 Minn. 547, 548, 224 N.W.2d 514, 515–516 (1974); *Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn.1981).

In this case, the trial court considered Rosalie's health, education, prospect of future employment, vocational skills, her substantial contributions to the farming operation, and the length of the marriage. It specifically found an unfair hardship to exclude Warren's non-marital interest in the pre-marital purchased land. The trial court's finding of hardship is supported by the record.

■ The court noted that Warren's non-marital interest was a small part of its present value and that Rosalie's contributions during Warren's hospitalization enabled the parties to retain it. The trial court also said that the building and improvements were constructed and paid from income generated by both. The trial court did not specify the value of Warren's non-marital interest.

■ The trial court awarded Warren the land he purchased prior to the marriage. It had many improvements made during the marriage. These should be viewed as marital property. *Faus v. Faus*, 319 N.W.2d 408 (1982). The trial court offset the farm awarded to Warren by awarding Rosalie a larger portion of property which the parties purchased during the marriage. Rosalie is 62 years old, unemployed, received no maintenance award, and receives only $128 per month in social security benefits.

Under Minn.Stat. § 518.58 (1982) "the court shall make a just and equitable division of marital property...." The trial court carefully balanced the needs and contributions of the parties and made an equitable distribution of the property. "There must be a clearly erroneous conclusion that is against logic and the facts on the record before this Court will find that the trial court abused its discretion." *Rutten v. Rutten*, 347 N.W.2d 47 at 50 slip op. at 4, (Minn. April 13, 1984).

## DECISION

The trial court's division of property was not a clear abuse of discretion.

Affirmed.